No. 47,920

In the Matter of the Petition for Reincorporation of Piper City, Kansas, a City of the·Third Class. BURKE A. BETTIS, et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF WYANDOTTE COUNTY, KANSAS, *Appellee*.

(551 P. 2d 909)

Opinion filed June 12, 1976.

*Louis A. Silks, Jr.,* of Shawnee Mission, argued the cause and was on the brief for the appellants.

*Thomas C. Lysaught,* Wyandotte county counselor, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The Board of County Commissioners of Wyandotte County denied a petition for the incorporation of the City of Piper, Kansas on April 1, 1974. The district court affirmed, and petitioners appeal.

This is a sequel to *City of Kansas City v. Board of County Commissioners*, 213 Kan. 777, 518 P. 2d 403. There the Board of County

Commissioners had unanimously granted a petition to incorporate Piper City. The City of Kansas City appealed, challenging the lawfulness of the incorporation. The district court approved the legality of the proceedings, but we reversed, holding the order of incorporation invalid for the reason that the required statutory notice had not been given.

Shortly following our decision a second petition for the incorporation of Piper City was circulated and filed with the county clerk on January 29, 1974. This petition was signed by over 90% of the residents of the 15-square-mile area involved. It was accompanied by supporting affidavits, certificates, and an enumeration. Appropriate notice was given, and a hearing was held before the Board on March 4, 1974. We note that there was a complete change of membership on the Board between the hearings on the earlier and the 1974 petitions.

Petitioners appeared with counsel and presented numerous witnesses and exhibits in support of the petition. Apparently the evidence was similar to that presented in 1971, but it was updated and reflected developments since the earlier hearing. No opposition was voiced. At the conclusion of the hearing the matter was adjourned until April 1, 1974 for the ostensible reason that this court had not then ruled upon a pending motion for rehearing in *City of Kansas City v. Board of County Commissioners,* supra. Our ruling, denying the motion, was made on March 6, 1974.

The hearing reconvened on April 1, 1974. Further evidence was offered in support of the petition, and two witnesses, residents of Kansas City, Kansas, appeared *pro se* and voiced opposition to the incorporation. Full opportunity was given to all present to be heard. At the conclusion of the hearing, the Board took a short recess and reconvened to announce its unanimous decision denying incorporation. The Board's order in pertinent part reads:

"The Board has reviewed the petition for incorporation, the evidence adduced at the March 4, 1974 hearing, the statements of residents of the area made at the March 4, 1974 meeting, and the statements and arguments of Louis A. Silks, attorney for the petitioning incorporators. The Board has also considered the evidence offered April 1, 1974. From such review the Board has determined that the petition for incorporation should be denied; that generally the tax base for the proposed area is not sufficient with the levy limitations imposed by law to produce sufficient revenues to render the services which a third class city should be expected to have when incorporation is granted; by reason thereof, the proposed incorporation would be contrary to the public interest.

"The Board has carefully considered all of the factors enumerated in K. S. A. 15-121 and makes these findings:

"1. The population and population density of the area within the boundaries of the territory proposed to be incorporated is not of sufficient size to justify incorporation.

"2. The Board has considered but has determined that there are no adverse reasons affecting the land area, the topography and the natural boundaries and drainage basin, but feels that these factors are not important.

"3. The area of platted land relative to the unplatted land, and the assessed value of the platted land relative to the assessed value of the unplatted areas, does not justify incorporation.

"4. There has been no extensive business, commercial and industrial development in the area within the past five years.

"5. There has been no substantial expansion in terms of population and construction within the last five years.

"6. There is little likelihood of sufficient growth in the area and in adjacent areas during the next ten years.

"7. The present cost of services from taxes levied by Prairie Township have provided substantial adequate governmental services in the area in the past.

"8. It would be adverse on adjacent areas and on local governmental structure of the entire urban community to grant incorporation.

"9. The territory is within five miles of the existing cities of Kansas City, Kansas and Bonner Springs, Kansas. The size and population of such cities and their growth in population, business and industry during the past ten years has been substantial.

"10. Said cities of Kansas City, Kansas and Bonner Springs, Kansas have extensively increased their respective boundaries by annexation during the past ten years and by reason thereof, the probability of growth of the Piper City area would be impaired.

"11. It is likely that the cities of Kansas City, Kansas and Bonner Springs, Kansas are willing to annex the territory and each city has the ability to provide city services in case of annexation.

"12. The general effect upon the entire community should there be additional cities in Wyandotte County, Kansas would be adverse; to grant incorporation of Piper City would interfere with the overall orderly and economic development of the area and would present an unreasonable multiplicity of independent municipal governments.

"By reason of the foregoing findings it is the unanimous decision of the Board, and IT IS SO ORDERED, that the petition for the incorporation of the area above described as a City of the third class, to be known as Piper City, Kansas, should be and the same is hereby denied."

The written decision of the Board was prepared prior to the April 1, 1974 hearing. The sentence "The Board has also considered the evidence offered April 1, 1974" was inserted in the document immediately prior to its adoption. Thereafter, petitioners gave timely notice of appeal to the district court pursuant to K. S. A. 19-223.

Also on April 1, 1974 the Board, without prior notice, unanimously passed a resolution adopting the County Road Unit System, pursuant to K. S. A. 68-515b. While not important in the matter at hand, it is of some moment to petitioners who reside in that portion of Prairie Township which constitutes, for all practical purposes, the only portion of Wyandotte County not presently within an incorporated city. So far as we are informed, no petition protesting the adoption of the resolution was filed.

The appeal came on for hearing before the district court on August 14, 1974. Mr. Burke Bettis testified on behalf of the petitioners and Commissioner Davis, Commissioner Hart, and Murray Rhodes, County Director of Planning, testified for respondents. The proceedings were continued to and concluded on August 28, 1974. The court took the matter under advisement, counsel submitted briefs, and on September 12, 1974 the court wrote to counsel a lengthy letter in which he detailed his findings and the reasons therefor, and concluded that judgment should be entered in favor of the Board. A journal entry followed. Petitioners then appealed to this court.

The trial court's carefully prepared letter-memorandum is enlightening. Since it treats at length the issues raised on this appeal, we quote from it as follows:

"In this appeal, the parties concede that under K. S. A. 15-126, this court may reverse the ruling of the Board denying reincorporation only 'if the court is of the opinion that the decision of the board was arbitrary, unlawful, or capricious'. A corollary to this rule is that this court may not substitute its judgment for that of the Board, and that the burden of proof is upon the appellant to prove that the Board's decision was arbitrary, unlawful, or capricious.

"At the outset, a question concerning the admissibility of evidence upon which the Board's decision depends must be decided. In accordance with the statutes, the Board of County Commissioners held a meeting on April 1, 1974, at which the evidence of the petitioners was presented and all those present permitted to voice their sentiments. An adjourned meeting was held on March 4, 1974. A stenographic record of both proceedings was made. By stipulation of counsel, all of this evidence as shown by the transcript, including the exhibits, was introduced at the hearing before this court.

"The County Counselor then offered the testimony of two of the County Commissioners to explain what other information the Board had considered and the basis for its findings, and also offered the testimony of the County Planning Director to explain exhibits numbered 24 and 26 prepared by him for the Board.

"Petitioner's counsel objected to this additional evidence on the grounds that counsel had stipulated prior to trial that only the evidence before the Board as shown by the transcript of the two [hearings] was to be introduced. Re-

spondent's counsel, however, admits only that he stipulated to all the evidence as shown by the transcript but denies that the stipulation went farther than that. It is his contention that since the Board considered other evidence in its possession, it should be permitted to show [what] such evidence was in order to show that its decision was not arbitrary or capricious. Whatever the stipulation, petitioners offered no additional evidence at the hearing before this court on August 14, 1974 or at the continued hearing on August 23, 1974.

"It is the further contention of petitioner's counsel that under the statutes (K. S. A. 15-116, et seq.) the Board is required to make its decision solely on the basis of the evidence presented at the statutory hearing before it, and that this court in determining whether the Board's action was arbitrary and capricious must do so on the basis of the record of such hearing.

"The hearing before the Board is designed to give the inhabitants of the area and those most likely to be affected thereby an opportunity to present their views to the Board, and the Board is directed to conduct it in such manner as to it seems 'best suited to the occasion'. In my opinion, the statute does not contemplate that this hearing shall be an adversary hearing in the sense of civil trial. There were no pleadings to define the issues. The Board is given certain guide lines and factors to consider, but these factors are not exclusive. (K. S. A. 15-121). Most of the evidence presented to the Board was hearsay in the form of statistics, reports, letters and opinions. There were no objections to the evidence or cross examination. As a practical matter, the Board had no way of knowing what the evidence would be and what issues would develop until after the hearing was held.

"It is only after the hearing is adjourned sine die that the Board is directed to consider the matter. It is then authorized to request the director of the State Department of Economic Development to make a study not only of the evidence presented at the hearing but also of the general area in which the territory is located, information in possession of the Board and other sources and render an opinion as to the advisability of the proposed incorporation. This is also permissive and not mandatory. All of this suggests that the Board is not limited to consideration only of the evidence presented at the hearing. And if it is permissible to ask the director of a State agency to make a study of such other information, no reason suggests itself why the Board may not ask its own expert, the County Planning Director, to provide such information, and to consider this and such other information in its possession.

"The other evidence alluded to and considered by the Board included public records and information concerning such matters as the comparative budgets of the Townships and other cities in the County, costs of road maintenance, fire protection, levy limitations, sewage problems in the area, and their knowledge and experience as members of the Board and of individual members as a former township official and as a State Legislator.

"The Board also considered the information available to the Chairman of the Board as a member of M. A. R. C., an area planning council, that the proposed I-435 highway had been tentatively postponed for as much as 15 years, which information had also been publicized in the news reports and was a matter of common knowledge. They also conducted a personal survey of the roads in Piper which they considered.

"In my opinion, the statute does not contemplate that the Board may con-

sider only the evidence presented at the hearing and exclude all other information and evidence. To hold otherwise would mean that if no opposition appeared at the meeting and presented counter evidence, as was the case here, the Board would have no alternative but to approve the petition regardless of the situation. This would amount to no more than a plebiscite of those present at the meeting.

"It was also contended that the fact that the former Board approved the incorporation of Piper City is evidence that the present Board acted arbitrarily and capriciously in denying reincorporation since the same evidence was presented at both hearings. The fact is, however, that while petitioners presented the same evidence both times, with some statistics up dated the second time, the present Board had evidence and information before it that was not available to the former Board.

"For example, it had a study and exhibits prepared for it by its County Planning Director. It had up dated statistics on budget items and costs. It had knowledge of the operations of Piper City and developments in the area during the intervening two year period and knowledge of the condition of the roads obtained from personal inspection together with the knowledge that construction of I-435 was no longer imminent. In addition, Piper was no longer threatened with imminent annexation as before.

"Among the findings given by the Board upon which it based its order denying reincorporation are these: The area sought to be incorporated covers 15 square miles or 9600 acres which would make it the second largest city in the County. It has a population of approximately 810 persons and contains approximately 255 households. There are 14 subdivisions with 428 lots of which only 80 are occupied. The unincorporated town of Piper is located on less than 80 acres in the southeast part of the area. The only other development of any consequence is a sub-division called Dub's Dread located in about the middle of the area. Outside of these two areas, the population is sparse. There are several square mile sections that contain as few as 5 or 6 houses. More than 90% of the area is devoted to woodlands and agricultural uses. There is a private sewage facility in Dub's Dread, otherwise the area has no sewers and none were presently planned. The existing water facilities from Rural Water Districts # 2 and # 4 are limited and would have to be expanded to support any sort of expansion, and the Board of Public Utilities has announced as a matter of policy that it will not serve any more incorporated cities. The area would have 33.5 miles of roads to maintain. The budget for 1973 was $26,239.80 and for 1974 was $29,570.60 which was not sufficient, in its opinion, to provide the necessary services. The roads in the area were in poor condition. The Board has adopted the County unit road system and is prepared to up grade and maintain the roads in the area. The present zoning regulations of the County will insure orderly and planned development in the area. There has been no significant development or growth in the area within the past five years.

"In general, the Board felt that the situation had changed, since 1971, that Piper City could not provide the necessary services of a third class city in such a large area with the existing tax base and budget, that with the threat of annexation removed, the petition to incorporate was premature. It did not rule out future petitions to incorporate.

"The law is settled in this state that the creation of municipalities involves essentially the exercise of legislative and not judicial power, and the power to make such determination is conferred upon the Board of County Commissioners. [citing *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451; and *Ruland v. City of Augusta,* 120 Kan. 42, 242 Pac. 456.]

"The petitioners disputed some of the findings of the Board and presented opinions and statistics of their own to prove otherwise. Obviously, some of the issues are arguable. But under the evidence in this case, I cannot hold that in reaching its decision, the Board acted arbitrarily and capriciously. Judgment will therefore be entered in favor of the respondent Board. . . ."

The principal claim of error is that the Board, in arriving at its decision, went outside of the record and considered matters not in evidence. The question is whether a Board of County Commissioners, in acting upon a petition to incorporate under K. S. A. 15-115, *et seq.,* must confine its consideration to the evidence offered at the public hearing.

When weighing the pros and cons and determining the advisability of incorporation, the board is performing a legislative function. *Lampe v. City of Leawood,* 170 Kan. 251, 253, 225 P. 2d 73; *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451. K. S. A. 15-123 specifically provides that after a public hearing has been adjourned, the board (ostensibly to assist it in arriving at a decision) "may request the director of the division of planning of the state department of economic development to make a study of the general area in which the territory is located, information in possession of the county board and other sources, and render an opinion as to the advisability of the proposed incorporation." A board has readily available to it from county officers tax and valuation data, plats, road and highway information. It has first-hand knowledge of the area. Members of such boards are no strangers to local finance, budget, road, waste disposal, water, sewage and like problems. We see no reason why the board cannot consider all such matters, whether touched upon by the evidence or not.

A legislature may of course give consideration to matters not presented during hearings on proposed legislation. The board acts in a legislative capacity. The hearings are not in the true sense adversary. Here there was but one side presented. Certainly a board is not compelled to grant incorporation where the petitioners make a *prima facie* showing, no one appears in opposition, and no evidence to the contrary is offered.

Where, as here, the territory lies within five miles of incorporated cities, a unanimous vote of the commissioners is required. Viewing

the act as a whole, we think it is clear that the legislature did not intend the action of the board to be an empty formalism. The board is required to consider, among others, a large number of factors specified by the legislature. K. S. A. 15-121. These factors must be considered—whether or not there is evidence upon each. The board may employ consultants to provide information and assistance, and to gather information. K. S. A. 15-122. And as noted above, it may request a further study and opinion after the hearing has been concluded. K. S. A. 15-123.

In sustaining a decree of the Court of Quarter Sessions of Berks County denying incorporation, the Superior Court of Pennsylvania said:

"A proceeding to incorporate a borough 'is not in the nature of private litigation'. . . . Such a proceeding largely involves issues of fact and questions of expediency for the Court of Quarter Sessions. . . . 'In the consideration of the questions of fact and expediency arising in such cases the judges of the quarter sessions, having personal knowledge of the territory sought to be incorporated and of the witnesses who testify as to the facts, are more likely to arrive at a correct conclusion . . . than the members of a tribunal sitting at a distance from the scene of controversy, who are without full information as to local conditions'. . . ." *Petition for Incorporation of Borough of Blandon*, 182 Pa. Super. 304, _____, 126 A. 2d 506, 508 (1956).

We conclude that it was not error for the Board of County Commissioners to consider matters within the personal knowledge of the members, and other matters outside of the formal record in the incorporation proceeding.

Petitioners argue that the trial court erred in admitting testimony of two members of the Board in that such testimony was not in the record made before the Board; that the testimony violated the agreement of counsel limiting the evidence to the record; and that the admission of such testimony deprived petitioners of the opportunity for rebuttal, for proper cross-examination, or to offer further evidence. We have determined that it was proper for the Board to consider matters in addition to the evidence presented in open hearing. The issue before the district court was whether the decision of the Board was arbitrary, unlawful or capricious. We think the testimony of the members as to the additional information considered was highly relevant. The trial procedure in the district court is governed by our Code of Civil Procedure. The reasonableness of the Board's decision should be determined upon the basis of the evidence before the court, and that evidence is not necessarily limited to the evidence before the Board, so long as it is

relevant to the issue before the trial court. *Keeney v. City of Over-land Park,* 203 Kan. 389, 395, 454 P. 2d 456; *Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239; *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P. 2d 1.

Counsel disagreed as to whether they stipulated that the matter would be submitted to the court on the record before the Board. The attorney for petitioners so contended. The county counselor contended that he stipulated only to the admission of that record into evidence before the court. The letter upon which claim of stipulation is based does not set forth a definite stipulation, and in fact stated that Mr. Rhodes would be called as a witness for the Board. Petitioners also offered the testimony of one witness, Mr. Bettis. This tends to negate petitioners' claim that counsel stipulated that the matter would be submitted on the transcripts alone.

Counsel for the Board announced at the commencement of the August 14th hearing before the court that two commissioners would be called as witnesses. Petititioners objected, but did not request a continuance. The witnesses were fully cross-examined. The presentation was not completed on August 14, but was continued for two weeks and concluded on August 28, 1974. Petitioners did not offer rebuttal evidence. The commissioners testified generally as to the matters taken into consideration by them in ruling upon the petition including matters which were not shown of record at the hearings. This testimony was relevant and germane to the issue before the district court. No prejudice to petitioners is shown. Petitioners were not denied preparation time, cross-examination or an opportunity to offer rebuttal evidence. We conclude that the district court did not err in admitting this testimony.

Finally, petitioners claim that the order denying incorporation was not supported by the record and was unlawful and constituted an arbitrary and unreasonable decision. The standards for review of decisions of the Board by the district court is found in K. S. A. 15-126, which provides in pertinent part:

". . . Upon appeal the district court shall have jurisdiction to affirm or, if the court is of the opinion that the decision of the board was arbitrary, unlawful, or capricious, to reverse the decision complained of or direct the county commissioners to take proper action."

This court's review powers of a district court decision are very much the same as the district court's review of the Board. As this court noted in *City of Kansas City v. Board of County Commissioners,* supra:

". . . In reviewing the proceedings of the county commissioners this court cannot concern itself with the advisability of the incorporaton. Our review must be restricted to judicial matters such as the construction of statutes and the application of the statutes to the facts of this case." (p. 779.)

Similar caution was expressed more recently in *State, ex rel., v. City of Overland Park*, 215 Kan. 700, 527 P. 2d 1340, wherein it was said:

"In reviewing the action of a city in annexing territory the wisdom, desirability, expedience and advisability of its action is not within the judicial realm, and factors involving economic or political considerations are not matters for the courts to consider." (Syl. 4.)

The findings of the Board are not findings of specific facts, but are for the most part conclusions drawn by the Board from the data before it. Petitioner would have us weigh and evaluate the evidence adduced on behalf of the petitioners and then draw contrary conclusions therefrom. This we cannot do.

The evidence, as we have noted, was supportive of the petition; but there were obvious omissions which, together with other available data, the Board was entitled to ponder.

Petitioners introduced charts showing that there were many cities in Kansas having smaller population and less assessed valuation. What was not offered was a comparison of the areas and road mileage of Kansas cities. During the hearing one of the Commissioners pointed out that the proposed city would be the second largest city in Wyandotte County, although it had but a fraction of the assessed valuation of Bonner Springs and Edwardsville; it would have more streets to maintain than Edwardsville; and Edwardsville was then having difficulty financing its street maintenance and was asking the county to assume the maintenance of some of its principal thoroughfares. The Commissioners also took into consideration county records relating to tax levies, and the findings and projections of Mid-America Regional Council, a planning facility. The Board personally inspected the roads in the proposed city, and estimated the cost of proper maintenance based upon present day costs of labor and material. These were all matters with which the Board was familiar, and matters which it might properly consider.

Its conclusions go to the ultimate question—the advisability of incorporation, a legislative judgment which we are not authorized to consider.

Upon the record before us we find no error. Accordingly, we affirm the judgment.