No. 52,977

QUIVIRA FALLS COMMUNITY ASSOCIATION, *Appellant,* v. JOHNSON COUNTY, KANSAS: CLAY L. WIRT, JOHN J. FRANKE, and ROBERT C. BACON, as Board of County Commissioners of Johnson County, Kansas, and as Board of Equalization of Johnson County, Kansas; and DONALD CURRY, Johnson County Clerk; EDNA C. CRAIG, Johnson County Treasurer; and PRATHER H. BROWN, Johnson County Appraiser, *Appellees and Cross-Appellants.*

(634 P.2d 1115)

Opinion filed October 23, 1981.

*J. Nelson Happy,* of Happy, House, Cooling & Herbers, P.C., of Kansas City, Missouri, argued the cause and *Joseph Y. Holman,* of Sheppard and Holman, of Prairie Village, was with him on the brief for appellant.

*Bernis G. Terry,* assistant county counselor, argued the cause and *Lyndus A. Henry,* county counselor, was with him on the brief for appellees and cross-appellants.

The opinion of the court was delivered by

HOLMES, J.: The Quivira Falls Community Association (the Association) appeals from adverse rulings in two consolidated cases brought to recover real property ad valorem taxes paid under protest. Johnson County, Kansas, its Board of County Commissioners and the other named county officials will be

referred to collectively as Johnson County. The Association is a non-profit organization composed of the individual lot owners, their mortgagees and the developer of a planned unit development (PUD), known as Quivira Falls, consisting of single family dwellings and townhouses in Overland Park.

The Quivira Falls planned unit development consists of 148 acres upon which the developers originally planned to construct approximately 1,000 single family dwellings and townhouses. Upon application of the developer, Johnson County granted appropriate zoning for the entire 148 acres subject to the same being platted as development progressed. Approximately four hundred forty units had been completed as of the time of filing the first case. As development progresses the developer plats additional acreage within the 148 acres and each such area consists of a block containing sixteen to twenty lots. Each individual lot within a block is limited to the land underlying the individual dwelling unit plus sixteen feet for patio purposes next to the rear wall of the unit. The balance of the yard, trees, driveways, etc., are part of what is called the "common area." The common area for the entire project also includes streets not dedicated to the city, recreational facilities, including a swimming pool, tennis courts, a clubhouse and picnic areas. In addition, the common area contains 30 acres lying 100 feet on either side of Indian Creek, which runs through the project. Most of these thirty acres lie within what has been determined to be the 100 year flood plain of Indian Creek and, due to setback requirements of Overland Park, cannot be used for construction. As each block is platted and subsequently developed, the common areas in that block are designated collectively as one lot and then conveyed by the developer to the Association. The common areas are subject to certain covenants, conditions, restrictions and easements (referred to by the parties as CCRs), which limit the use of the property for the benefit of the individual lot owners, the developer and the Association. Additional facts will be detailed later.

At the outset there are certain procedural and jurisdictional matters which must be considered. The Association brought two actions seeking to recover real property taxes paid under protest on the common areas. The first case (#79,734) was originally filed before the Board of Tax Appeals (BOTA) to recover the taxes paid

for the years 1975, 1976 and 1977. The second case (#89,830) was filed directly in the district court to recover the taxes paid for the first half of 1979. It is the contention of the Association, among other things, that the common areas have no fair market value due to the restrictions upon their use and therefore, the Association should not be assessed and taxed for the property, and that taxation of the common areas constitutes double taxation of the individual lot owners. The BOTA held against the Association in an order mailed September 8, 1978, and the Association appealed that order to the district court on October 10, 1978. On January 15, 1980, the Association filed case No. 89,830 in the district court. As the underlying issues in both cases were the same, the cases were consolidated on March 28, 1980. On March 19, 1980, Johnson County filed a motion to dismiss case No. 79,734 on the grounds there was no statutory right to appeal from an original action filed with the BOTA and on the further ground that the appeal from the BOTA order was not timely filed. At the same time, Johnson County filed a motion for judgment on the pleadings in case No. 89,830, asserting that if case No. 79,734 was dismissed for lack of jurisdiction the order and findings of the BOTA in that case would be res judicata on the issues in the later case and further, that the doctrine of collateral estoppel applied. The parties agree that the legal issues in both cases are the same and the evidence before the BOTA in case No. 79,734 has been stipulated as the evidence to be considered in No. 89,830. There was no evidentiary hearing in the district court.

Johnson County's attack on the jurisdiction of the district court to hear the appeal from the BOTA is twofold. First, it asserts that there was no right to appeal from an original action filed with the BOTA. The Association filed its action before the BOTA pursuant to K.S.A. 79-2005 and appeals from the BOTA were governed by K.S.A. 1978 Supp. 74-2426. In *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P.2d 29 (1961), this court held that under the statutes as they then existed there was no appeal in actions originally filed before the BOTA. The court reached the same conclusion in *In re Lakeview Gardens, Inc.*, 227 Kan. 161, 605 P.2d 576 (1980). In response to *Lakeview Gardens* the legislature in 1980 amended the statute (K.S.A. 74-2426) to provide for such an appeal and also made the statute retroactive to January 1, 1980. The validity of the statute was subsequently

upheld in *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, 618 P.2d 778 (1980). Case No. 79,734 was dismissed by the trial court in accordance with a memorandum decision dated December 2, 1980. Clearly, the dismissal of case No. 79,734 based upon our earlier cases and the statute as it existed prior to the 1980 amendment was error.

Johnson County next asserts that if the dismissal was incorrect under K.S.A. 74-2426, then the court still had no jurisdiction because the appeal was not filed within 30 days of the mailing of the BOTA order. (K.S.A. 1978 Supp. 74-2426.) The order was mailed September 8, 1978, and the Association filed its appeal with the Clerk of the District Court on Tuesday, October 10, 1978. Thirty days from September 8, 1978, would fall upon October 8, 1978, which was a Sunday. Monday, October 9, 1978, was Columbus Day, a legal holiday. Johnson County relies upon *Vaughn v. Martell,* 226 Kan. 658, 603 P.2d 191 (1979), wherein we held:

"The time for taking an administrative appeal, as prescribed by statute, is jurisdictional and delay beyond the statutory time is fatal." Syl. ¶ 2.

Johnson County's interpretation of our holding in *Vaughn* is too narrow and its reliance on that case is without merit. K.S.A. 60-206($a$) provides, in part:

"In computing any period of time prescribed or allowed by this chapter, by the local rules of any district court, by order of court, *or by any applicable statute,* the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or a legal holiday." (Emphasis supplied.)

We hold that K.S.A. 60-206($a$) applies to appeals from orders of the BOTA and that the appeal in case No. 79,734 was timely filed. The dismissal of the appeal in that case was error and the order of the district court dismissing the appeal is reversed. Having determined that it was error for the trial court to dismiss case No. 79,734, the argument by Johnson County that the Association is bound in case No. 89,830 by the BOTA decision in the earlier case on the theories of res judicata and collateral estoppel is no longer viable and we need not discuss those issues.

We now turn to the meat of this appeal. The Association contends that the assessment and taxation of the common areas in

the Quivira Falls PUD is illegal and void because (1) it subjects the individual lot owners to double taxation, (2) the common areas have no fair market value within the meaning of K.S.A. 79-503 and (3) the action of the Johnson County appraiser and the BOTA was unreasonable, arbitrary, capricious and/or fraudulent.

The applicable statutes provide, in part:

K.S.A. 79-101:

"All property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

K.S.A. 79-411:

"The assessor or appraiser from actual view and inspection, from consultation with the owner or agent thereof if expedient and from such other sources of information as are within his or her reach, shall determine as nearly as is practicable the fair market value in money of all taxable real property within his or her township, city or county, as the case may be and he or she shall appraise all such real property at its fair market value in money and assess the same as required in K.S.A. 79-1439."

K.S.A. 79-501:

"Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the assessor from actual view and inspection of the property; but the price at which such real property would sell at auction or forced sale shall not be taken as the criterion of such fair market value in money. Tangible personal property shall be appraised at its fair market value in money at the place where the same may be held. All such real and tangible personal property shall be appraised at its fair market value in money and assessed as required in K.S.A. 79-1439."

K.S.A. 79-503:

"Fair market value in money shall mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time. Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion:

(a) The proper classification of lands and improvements;

(b) the size thereof;

(c) the effect of location on value;

(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

(e) cost of reproduction or improvements;

(f) productivity;

(g) earning capacity as indicated by lease price or by capitalization of net income;

(h) rental or reasonable rental values;

(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; and

(j) comparison with values of other property of known or recognized value. The ratio study shall not be used as an appraisal for appraisal purposes."

The common areas and all of the individual lots in the Quivira Falls PUD are subject to comprehensive covenants, conditions, restrictions and easements (CCRs), which run with the land and which were prepared and placed of record by the original developers. The designation of the common areas makes the purchase of a lot or dwelling in the development unusually attractive as the individual lot owners have access to and the use of such areas which include tennis courts, a swimming pool, clubhouse, picnic facilities and other recreational areas. The common areas are maintained by the Association which in turn is supported by monthly dues payable by each lot owner and which are used by the Association to pay for expenses, repairs, maintenance, insurance and, among other things, "ad valorem and other taxes on land and improvements owned by the Association." Any sale or conveyance of individual lots or of any portion of the common areas is subject to the CCRs.

It is the position of the Association that assessment and taxation of its common areas constitute double taxation in that the appraised value and subsequent assessment of the individually owned lots include a proportionate share of the value of the common areas. Regardless of the merits of such an argument, plaintiff has simply failed to show that the appraisal and valuation of the individual lots include the value of the common areas. The Association presented only two witnesses before the BOTA: one of the original developers and the president of the Quivira Falls Community Association. The developer testified as to the plan of development, the reasons for the CCRs and his method of determining the sales price of each individual home or townhouse. He testified that in arriving at the sales price of a particular unit he took the cost of the land, added to it the actual cost of construction of the improvements which he referred to as the "boards and nails," plus a figure for profit and those three items made up the major portion of the sales price. In arriving at the cost of any lot he considered the total original cost of the 148 acres and divided it by the 1,000 anticipated building sites, thereby including in each site a proportionate part of the cost of

the common areas which were not available for construction of dwellings. The Association argues that as its taxes are paid through the collection of monthly dues from its members and as the value of each individual lot has been enhanced by a proportionate share of the value of the common areas to again tax the common area property to the Association results in double taxation. This argument might have some merit if the individual lots were appraised and assessed solely on the basis of sales price or if there was credible evidence that the value of the common areas was added into the appraised value of the individual lots for purposes of taxation. The actual method of valuing and assessing the common areas will be discussed later in this opinion.

The appellant relies heavily upon certain excerpts from the deposition of Prather H. Brown, Jr., the Johnson County appraiser, and chooses to ignore, for the most part, the testimony of Mr. Brown before the BOTA. Suffice it to say, the Johnson County appraiser testified that in valuing and assessing the individual lots, the proximity to and the right to the use of the common areas was a factor to be considered in arriving at the fair market value of each individual lot but such value did not include or offset the value of the common areas. He testified that the sales price of each individual unit was also a factor which was considered but played a very minimal part in the overall appraisal and assessment procedure. The record does not reflect any direct relation between sales price and the valuations for tax purposes. K.S.A. 79-503 requires the county appraiser to consider several factors including sales price, effect of location, economic obsolescence, productivity, earning capacity, and others. The Association cites numerous cases from various jurisdictions and other authorities which support the argument that heavily restricted property which cannot be profitably utilized has little if any value and if taxed at all should be assessed to the owners of the other properties which reap the benefits of such restricted use. A representative group of those are cited in connection with appellant's argument that the Association property has no value. After a careful review of the entire record, we cannot say as a matter of law that the taxation of the common areas results in double taxation and certainly the evidence would not support such a factual finding.

Intertwined with appellant's first argument is the contention

that due to the highly restricted use of the common areas, no sensible person would buy such property and therefore it has no value for tax purposes. At this point we pause to point out that neither counsel has seen fit to make the documentary evidence admitted by the BOTA, and presumably presented to the district court, a part of the record in this case.

The Association is correct when it states that K.S.A. 79-501 requires all real property to be appraised at its fair market value and that 79-503 defines fair market value to "mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time." Appellant relies upon, among others, *Twin Lakes Golf Club v. King County,* 87 Wash. 2d 1, 548 P.2d 538 (1976); *Dept. of Revenue v. Morganwoods Greentree, Inc.,* 341 So.2d 756 (Fla. 1976); *Supervisor of Assess. v. Bay Ridge,* 270 Md. 216, 310 A.2d 773 (1973); *Tualatin Development v. Dept. of Rev.,* 256 Or. 323, 473 P.2d 660 (1970); and *Lochmoor Club v. Grosse Pte. Woods,* 10 Mich. App. 394, 159 N.W.2d 756 (1968). Nothing would be gained in extending this already lengthy opinion by discussing the authorities relied upon by the appellant. We have considered all of them and they are all distinguishable from the case at bar. In most, if not all, of the cases there was testimony and evidence that the property in question had little or no value or that the value of the common areas was included in the appraisal and valuation of the individual properties. In the present case neither of the appellant's witnesses testified that the common areas had no value. On the other hand, Mr. Brown testified that the property does have value and that accordingly he valued and assessed it for taxation as required by the statutes. We cannot say as a matter of law that the CCRs have rendered some 70 to 80 acres in Overland Park, Kansas, worthless and there is nothing in the record before us to support a finding of fact to that effect.

Finally, the Association contends that the appraisal and assessment of the common area property is illegal and void because the action of the Johnson County appraiser and the decision and order of the BOTA are unreasonable, arbitrary, capricious and/or fraudulent. Appellant's contention is based upon the method used by the Johnson County appraiser in ascertaining or setting

the valuation on the common areas. Appellant also contends that the BOTA completely ignored the case law from other jurisdictions and therefore the action of the BOTA is illegal. The order of the BOTA indicates the contrary. The county appraiser testified that the appraisals of the property in question were done under his supervision and direction. He testified that the real property in the Quivira Falls PUD was appraised at 75¢ per square foot for the land underlying the dwelling units and other improvements, and 50¢ per square foot for the common areas, with the exception of the private streets which were appraised at 30¢ per square foot. The figures utilized by the county appraiser were based upon valuations established in 1968 by the Cleminshaw Company when it did a countywide reappraisal of all real estate located in Johnson County. At that time there was only one PUD located in Johnson County and it was known as the Greenbriar development. Mr. Brown participated in the countywide reappraisal and in the various hearings and proceedings concerning the valuation and assessment of the Greenbriar development. Since that time there have been four or five additional planned unit developments in Johnson County and the property in each of them has been appraised and assessed in accordance with the procedures and figures used by the Cleminshaw Company in its 1968 appraisal of Greenbriar. The Greenbriar assessment was the subject of protests before the BOTA and with some adjustments in values the procedure was approved. The Association contends that the application of the adjusted values from the Greenbriar hearings to Quivira Falls and all other similar developments is arbitrary and therefore unreasonable and fraudulent. Mr. Brown on cross-examination testified as follows:

"Q. Now, in each of these cases, I would like to try to understand your testimony, let's talk about the three you mentioned, in addition to Greenbriar, and Quivira Falls, a package, the technique that would be employed would be to first go to the Cleminshaw manual, and ascertain the rate at 50 cents a square foot, or 75 cents a square foot, or 30 cents a square foot, subject to the reductions that the County Board of Equalization may impose; well, just assume that, and then in each, or all of these projects, you would then multiply the number of square feet of common area, say, by either the 50 cents, or the 75-cent rate, is that correct, as the method that would be done?

"A. Yes.

"Q. And there wouldn't be any difference in any of the five projects, then, of coming to that figure per square foot, it would all be the same?

"A. As long as they were comparable, and, in our opinion, they are comparable properties, and they will be assessed uniformly and equally, yes."

Again, no evidence was introduced by appellant to refute the testimony of Mr. Brown and no evidence was produced to indicate that the method of appraisal and valuation utilized by the Cleminshaw Company in its appraisal of the Greenbriar development did not conform to the statutory requirements and would not be applicable to Quivira Falls. The Johnson County appraiser determined that Quivira Falls was comparable to Greenbriar, that the Greenbriar method of appraisal was proper and that the values determined in the Greenbriar appraisal were applicable to Quivira Falls. It has long been the law in this state that it is presumed that a public officer will faithfully perform his duty. *Robinson v. State,* 198 Kan. 543, 426 P.2d 95 (1967). There is no showing that Mr. Brown failed to properly perform his duties. Lacking any evidence to the contrary we cannot say that the actions of the Johnson County appraiser or the original order of the BOTA in this case were arbitrary, capricious, unreasonable or fraudulent.

The BOTA made, among others, the following findings:

"5. That this Board has reviewed the numerous case citations presented to it by the parties arising from other jurisdictions regarding the instant case's legal question.

. . . . .

"13. That the county has used a correct procedure herein in the valuation of the subject properties in that they first ascribe a valuation to the individual properties owned by the various homeowner-taxpayers within the planned unit development and subsequently ascribe a valuation to the various common areas surrounding said homesites.  .  .  .

"14. That in the instant case there is no evidence to support the assertions that a value has been ascribed to the individual tracts bearing a relationship to the whole of the common areas. That the common areas have been ascribed a separate valuation apart and distinct from any other value in the individual homesite. That the common areas valuation and subsequent levy of taxes is then properly assignable and billable to the association.

"15. That to assert that the common areas have no value is an unwarranted contention in that the common areas are vital to the planned unit development concept and are retained by the homeowners' association for their use in conjunction with the individual tracts and that the restrictions placed on said common areas are to the benefit of the individual homeowners who are members of the association by preserving these areas for mutual enjoyment and, not to their detriment as contended by the taxpayer.

"16. That no evidence has been presented which would justify this Board in making an alteration in the valuation currently assigned to the common areas which are the proper subject of taxation as a separate and distinct entity."

The trial judge in her memorandum opinion specifically found that "Johnson County has used the correct procedure in the valuation of the subject properties."

Johnson County spent considerable time and effort discussing the appropriate standard of review in the two cases, one being an appeal from an order of an administrative agency and the other an appeal from an original action filed in the district court. Applying any recognized standard of review it is obvious from the record that the quoted findings of the BOTA and the trial court are adequately supported by the evidence and that the Association failed to meet its burden of proof. It appears to be the position of the appellant that this court should hold, as a matter of law, that the restricted use of the common areas results in the property having no value or that its value, if any, must be assessed to the individual lot owners. This we may not do.

The parties have stipulated that the BOTA record in case No. 79,734 would constitute the evidence in the district court in case No. 89,830 and such record adequately supports the findings of the BOTA in case No. 79,734 and the judgment of the district court in case No. 89,830.

The judgment of the district court dismissing case No. 79,734 is reversed, the judgment in case No. 89,830 is affirmed and a similar judgment in favor of Johnson County in case No. 79,734 is directed. The case is remanded to the district court with directions to enter judgment on the merits in case No. 79,734 in favor of Johnson County.