No. 54,336

THE CITY OF WICHITA, KANSAS, A Municipal Corporation, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellant,* v. FREDERICK J. DODDS, III, DOROTHY F. LOWEN, CAROL A. CONNIE, VONDA J. BLANTON, VIRGINIA BROOKHOUSER, and 795 PETITIONERS OF BEL AIRE, SEDGWICK COUNTY, KANSAS, *Intervenors/Appellants.*

(652 P.2d 717)

Opinion filed October 22, 1982.

*Royce E. Wallace,* of Wichita, argued the cause and was on the brief for appellant, Board of County Commissioners of Sedgwick County.

*Patrick L. Connolly,* of Miller, Connolly & Gribble, of Wichita, argued the cause and was on the brief for intervenor-appellants, Frederick J. Dodds, III, *et al.*

*H. R. Kuhn,* assistant city attorney, and *Douglas J. Moshier,* assistant city

attorney, argued the cause and *John Dekker,* city attorney, was with them on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal from an order of the district court reversing an order of the Board of County Commissioners of Sedgwick County (the Board) which granted incorporation of the territory northeast of Wichita generally described as the Bel Aire Improvement District (Bel Aire).

The Board ordered incorporation of the area as a third class city to be known as the City of Bel Aire, Kansas. The incorporation was opposed by the City of Wichita and others on its behalf. The order of the Board was reversed on appeal to the district court based on the trial court's conclusions of law that the record showed "no joint consideration or discussion by the Board of County Commissioners of any of the factors contained in K.S.A. 15-121," that "the evidence against the advisability of the incorporation of Bel Aire and in favor of its annexation by the City of Wichita is substantial, convincing and compelling," and that the action by the Board was "unsupported by substantial evidence and was therefore arbitrary." The Board and the intervenors, residents of Bel Aire, appeal. The City of Wichita has filed a cross-appeal from an order of the trial court limiting certain expert testimony that the City of Wichita desired to present for the first time before the trial court.

At the outset the parties are not in agreement as to the proper scope of review to be applied by the trial court, and this court, to the proceedings and order of the Board. The scope of judicial review is dependent upon the statutes authorizing the appeal, and in the consideration of the legislative function of a board of county commissioners in granting or denying incorporation of a city, it is extremely narrow. The statutes authorizing the incorporation of cities are found at K.S.A. 15-115 through 15-126.

K.S.A. 15-126 provides:

"Any person who shall have an interest in and be aggrieved by the decision of the board of county commissioners under the provisions of K.S.A. 15-115, *et seq.,* may appeal to the district court of the same county in the same manner and method provided for by K.S.A. 19-223. *Upon appeal the district court shall have jurisdiction to affirm or, if the court is of the opinion that the decision of the board was arbitrary, unlawful, or capricious, to reverse* the decision complained of or direct the county commissioners to take proper action." (Emphasis added.)

The City of Wichita contends that the usual three-pronged test, including the substantial evidence test, applied to appeals from quasi-judicial decisions of administrative agencies, applies equally to appeals from the purely legislative function performed by a board of county commissioners in a city incorporation matter. On the other hand, appellants contend that K.S.A. 15-126 establishes a narrower scope of review. We agree. K.S.A. 15-126 limits the scope of review of the trial court and this court to the sole determination of whether the order of the Board was "arbitrary, unlawful, or capricious." If it was not, the order of the Board must be affirmed.

The district court, and *a fortiori* this court, on appeal is not at liberty to reweigh evidence and substitute its judgment for that of the Board. See *Boswell, Inc., d/b/a Reno County Adult Care Home v. Harkins,* 230 Kan. 610, 640 P.2d 1202 (1982). The power to create municipal corporations is a legislative power. *City of Kansas City v. Board of County Commissioners,* 213 Kan. 777, 518 P.2d 403 (1974); *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451 (1923).

"The legislature placed such creative power with the board of county commissioners subject to certain statutory requirements. In reviewing the proceedings of the county commissioners this court cannot concern itself with the advisability of the incorporation. Our review must be restricted to judicial matters such as the construction of statutes and the application of the statutes to the facts of this case." 213 Kan. at 779.

To determine whether the district court properly discharged its function, we make the same review of the agency decision in the first instance as the district court does. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 451, 436 P.2d 828 (1968).

It is generally held that a finding of unlawfulness under the various administrative appeals statutes applies to the procedural aspects of the proceedings before the agency and the determination of whether the action taken was within the authority of the agency. In *Kansas City,* 213 Kan. 777, the court was faced with proceedings involving the incorporation of Piper City in Wyandotte County. The Wyandotte County Board of County Commissioners granted incorporation but failed to give the notice required by K.S.A. 15-119. On appeal this court held that the failure to give the required notice resulted in the proceedings being unlawful and the attempted incorporation was invalid. In the instant case there is no allegation by any party that there were any

procedural deficiencies in the action before the Board and hence there is no contention that the order of the Board was procedurally unlawful.

The appellants assert there is only one issue on appeal—that being whether the action of the Board in granting incorporation of Bel Aire was arbitrary, unlawful or capricious. The appellee, City of Wichita, states the issues differently and asserts numerous contentions in support of the trial court's decision.

The Bel Aire Improvement District had been in existence for some twenty-five years when in August of 1980, a petition for incorporation was filed with the Sedgwick County Clerk pursuant to K.S.A. 15-115 *et seq.* The Bel Aire community is a residential area comprising over eight hundred acres of land located at the northeast corner of the City of Wichita. When the incorporation proceedings began, a narrow strip of agricultural land some one-fourth to one-half mile wide separated the Bel Aire area from the Wichita city limits. At the time of the argument of this appeal, we were advised Bel Aire and Wichita are now contiguous due to unilateral annexation proceedings by the City of Wichita under K.S.A. 12-519 *et seq.*

K.S.A. 15-121 sets forth certain factors which are to be considered by a board of county commissioners and provides:

"As a guide in determining the advisability of incorporating the territory, the board or joint board of county commissioners shall consider the following factors, among others:

(1) Population and population density of the area within the boundaries of the territory;

(2) Land area, topography, natural boundaries and drainage basin;

(3) Area of platted land relative to unplatted and assessed value of platted land relative to assessed value of unplatted areas;

(4) Extent of business, commercial, and industrial development;

(5) Past expansion in terms of population and construction;

(6) Likelihood of significant growth in the area, and in adjacent areas, during the next ten (10) years;

(7) The present cost and adequacy of governmental services and controls in the area and the probable effect of the proposed action and of alternative courses of action on the cost of adequacy of local governmental services and regulation in the area and in adjacent areas;

(8) Effect of the proposed action, and of alternative actions, on adjacent areas, and on the local governmental structure of the entire urban community.

If the territory or any part thereof is within five (5) miles of an existing city, the board or joint board of county commissioners shall take into consideration[:]

(1) The size and population of such city;

(2) Its growth in population, business and industry during the past ten (10) years;

(3) The extension of its boundaries during the past ten (10) years;

(4) The probability of its growth toward the territory during the ensuing ten (10) years, taking into consideration natural barriers and other reasons which might influence growth toward the territory;

(5) The willingness of the city to annex the territory and its ability to provide city services in case of annexation;

(6) The general effect upon the entire community, should there be additional cities in the area; all of these and other considerations having to do with the overall orderly and economic development of the area and to prevent an unreasonable multiplicity of independent municipal governments."

Pursuant to the statutes the Board, on September 25, 1980, conducted a public hearing on the advisability of incorporation. Notices to all required parties were properly given, and, in a nonadversary proceeding, ample opportunity was provided for *anyone* to provide appropriate data to the Board upon which they could base their decision. There is absolutely no indication in the record that the Board refused to allow the presentation of any "evidence" that would bear on its consideration of the factors outlined in K.S.A. 15-121. Numerous individuals appeared and made statements in support of the incorporation. Documents and testimony were received relative to the factors set forth in K.S.A. 15-121(1) through (8) and as the Bel Aire area was within five miles of the City of Wichita, information on the last six factors listed in the statute was received. An engineering report of the feasibility of a sewage treatment plant was presented as well as an anticipated budget reflecting mill levies, assessed valuations, estimated franchise taxes, federal revenue sharing, tax distribution and the proposed method of supplying the necessary utilities. The petition seeking incorporation, which admittedly met the requirements of K.S.A. 15-116, was signed by over 84% of the residents of the area who were over 18 years of age. Plats and maps were submitted showing the area contained over 900 platted lots.

The proposed incorporation was opposed by the City of Wichita, the Wichita Chamber of Commerce, the Metropolitan Area Planning Department and others. The evidence of the City of Wichita was more professionally presented and documented and supported the proposition that the annexation of Bel Aire to Wichita was preferable to its incorporation as a third class city. Wichita asserted that it was willing and desirous of proceeding with annexation.

On November 19, 1980, the Board unanimously approved the incorporation of Bel Aire as a third class city. On November 26, 1980, it issued an order approving its actions of November 19, 1980, which provided in pertinent part:

"COMES NOW THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDG-WICK, KANSAS on this 26th day of November, 1980 being the next regularly scheduled meeting of said Board after the meeting of November 19, 1980 and states as follows:

"The above captioned matter comes before this Board as the result of a petition being filed on August 12, 1980 pursuant to K.S.A. 15-115 et seq. Said petition is sufficient as to form and content and has been certified as required by law. The requisite notices were published, posted, or otherwise given in a timely and proper fashion. The public hearing of September 25, 1980 was lawfully convened, evidence and testimony presented at that time and information, documents and suggested findings submitted subsequent to that hearing by agreement of the representatives of the petitioners, those opposing incorporation and the Board of County Commissioners.

"The Board of County Commissioners of the County of Sedgwick, Kansas, having considered the evidence presented at the hearing September 25, 1980, the suggested findings and conclusions of the petitioners and of those opposing incorporation, other information it deemed relevant and being fully advised in the premises made the following findings and conclusions at the regularly scheduled meeting of November 19, 1980:

1. The matter of the incorporation of a city of the third class is a statutory function of the Board of County Commissioners, which sits as a legislative tribunal.

2. The entire territory for which an incorporation petition was filed lies within the boundaries of Sedgwick County, Kansas, thus this matter is properly before the Board of County Commissioners of the County of Sedgwick, Kansas.

3. The petition, signed by in excess of 50 electors of the territory, was submitted to the Board of County Commissioners of Sedgwick County, Kansas, August 12, 1980, describing the area to be incorporated as the City of Bel Aire, Kansas.

4. The enumeration of said territory was carried out between July 31, 1980 and August 11, 1980 by Jarold L. Patterson, Sr., qualified signer of the petition, whose affidavit reveals a population of 2,166 inhabitants, which is in excess of the statutory requirement of 300 inhabitants.

5. The territory contains 962 platted lots serviced by water and 912 platted lots serviced by sanitary sewer, both utilities provided by the Bel Aire Improvement District, a non-profit corporation.

6. The population of the petitioning area is 2,166, its population density 1,790.08 per square mile.

7. The land area of the petitioning area is 836 acres, topographically similar to much of South Central Kansas, with no significant natural boundaries with exception of a ridge line to the south requiring a lift station for sewage disposal.

8. The petitioning area is comprised of 542 platted acres with an assessed valuation of $4,594,980.00 (1980 Equalized Assessed Valuation) and 294 unplatted acres with an assessed valuation of $116,660.00.

9. There are three commercial structures (four retail establishments per petitioners information) and ten to twelve others operating from residences. Additionally, William D. Cox has requested inclusion of an additional 30 acre development for light commercial (shopping center, office) usage not included within the petitioning area. In close proximity are Koch Industries, Great Plains Industrial District and other enterprises.

10. Past expansion in the Bel Aire area is shown by an increase in population from 1,426 in 1970 to 2,166 presently. Also, over the past six years approximately 250 houses have been constructed in the area.

11. Significant population growth can be expected in the area in the next decade at an annual rate of approximately 3.2%. Additional residential construction of over 225 new homes is anticipated. This is not including the proposed residential and multifamily development planned by William Cox on 108 acres adjacent to the petitioning area.

12. Present governmental services provided by the Bel Aire Improvement District will require a mill levy of 82.4 mills. This is compared to a projected mill levy of 95.1 mills if Bel Aire is incorporated and the provision of certain services presently provided by other governmental units is centralized and paid through a city and a projected mill levy of 107 mills if annexed by the City of Wichita.

13. The evidence presented was inconclusive on the effect of the proposed action, or the alternatives except as set out herein at 18.. The effect on the local governmental structure of the urban area is similarly uncertain. The evidence on this point was in conflict and largely unsupported by tangible evidence.

14. The City of Wichita has a population of 273,570 and an area of 101.4 miles.

15. The present population of the City of Wichita is 273,570. This compares to 276,554 for 1970. Significant growth within the City of Wichita has occurred as measured by the addition of over fifty manufacturing plants in the past ten years and an increase in retail sales from $753,951,000 to $2,146,559,883 over the same period.

16. The City of Wichita between 1970 and 1980 extended its boundaries 12.2 square miles, averaging 1.36 square miles per year.

17. Over the next twenty years the area to the northeast of the City of Wichita bounded by Twenty-first Street North, Oliver, 45th Street North and Webb Road has been identified as a major growth area. This area includes a major portion of the Bel Aire area.

18. The City has manifested an intent to annex eligible properties in the Bel Aire Improvement District area by adoption of a resolution declaring the City's interest in annexing such properties. The City of Wichita has provided a time table for the extension of services to the area as follows:

Water and sewer system operation and maintenance and police protection to be provided upon completion of annexation proceedings.

Local street maintenance and fire protection to be provided by January 1, 1982.

Improvements to arterial streets to be scheduled in the City's Capital Improvement Program after 1985.

19. There is insufficient evidence from which the Board can conclude that the incorporation would have a detrimental effect upon the community as a whole or that the incorporation of the Bel Aire Improvement District would impede the

orderly and economic growth of area or by its incorporation create an unreasonable multiplicity of independent municipal governments.

The Board also reached the following conclusions from the evidence in the above captioned matter:

a) That the incorporation of the petitioning area will not impede the orderly and economic growth of the area.

b) That the incorporation of the petitioning area does not create an unreasonable multiplicity of independent municipal governments (presently seventeen as revealed in the studies and documents for the Mortgage Revenue Bond Program).

c) That upon the consideration of the evidence as a whole, the incorporation of the petitioning area will better serve the interest of the area by centralizing services, preserving the area's community identity, and expand the ability of the area residents to determine local affairs.

d) The incorporation is not demonstrably contrary to the public interest.

"NOW, THEREFORE, ON THIS 26th DAY OF NOVEMBER, 1980, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, KANSAS makes and adopts the following Order:

"The City of Bel Aire, Kansas whose territory is described as follows: . . . . is hereby incorporated as a city of the third class."

The City of Wichita appealed the order to the district court. The evidence before the trial court consisted of the record from the Board together with the depositions of County Commissioners Scott and Gragg and brief testimony from Robert A. Lakin, Director of the Metropolitan Area Planning Department.

The trial court in reversing the order of the Board made findings of fact and conclusions of law. Among the conclusions of law were:

"10. The record shows no joint consideration or discussion by the Board of County Commissioners of any of the factors contained in K.S.A. 15-121, therefore:

This Court must examine the record to ascertain if there is substantial evidence to support the decision of the Board of County Commissioners to incorporate Bel Aire.

"11. Before the Board of County Commissioners can grant a Petition for Incorporation, it must determine that:

(a) The incorporation of the territory would serve the interest of the territory better than present or future annexation to an adjacent city or creation of an authorized special service district or districts, and

(b) The incorporation of the territory would not be contrary to the public interest.

That the above determinations made on November 19, 1980, by the Board of County Commissioners were wholly unsupported by substantial evidence.

"12. The evidence against the advisability of the incorporation of Bel Aire and in favor of its annexation by the City of Wichita is substantial, convincing and compelling.

"13. That the action by the Board of County Commissioners incorporating Bel Aire as a city of the third class is unsupported by substantial evidence and was therefore arbitrary."

K.S.A. 15-123 provides in part:

"After the hearing has been adjourned *sine die,* the board or joint board of county commissioners shall consider the matter. It may request the director of the division of planning of the state department of economic development to make a study of the general area in which the territory is located, information in possession of the county board and other sources, and render an opinion as to the advisability of the proposed incorporation. *The petition for incorporation shall be denied if it is determined that present or future annexation to an adjacent city,* or the creation of an authorized special service district, or districts, *would better serve the interest of the area or that the proposed incorporation would be otherwise contrary to the public interest."* (Emphasis added.)

The City of Wichita, in its attempt to support the findings and conclusions of the trial court, claims that the Board acted arbitrarily in refusing to accept the recommendations of the local city and county metropolitan planning authorities, that the Board's failure to develop its own professional studies on the advisability of incorporation constitutes an impropriety, that the Board completely disregarded the evidence submitted to it and failed to give "due regard" to all the factors listed in K.S.A. 15-121. Wichita argues that the Board failed to properly discharge its function in that it imposed a burden on Wichita to prove that the incorporation should not be allowed and, finally, the City of Wichita argues against the advisability of incorporation. We do not deem it necessary to address each of the arguments raised by the City of Wichita.

In addition to the evidence before the Board, a portion of which was described above, the depositions of Commissioners Scott and Gragg were before the trial court. Each commissioner testified that he considered matters outside the evidence touched upon at the September 25, 1980, hearing and relied upon his own investigations, knowledge and expertise in considering each and every factor included in K.S.A. 15-121. Commissioner Scott had been a Sedgwick County Commissioner for 17 years and he testified as to his personal knowledge of the area, its needs and his background for making his decision in favor of incorporation. Commissioner Gragg testified that he also called upon his personal knowledge, expertise and experience in arriving at his decision. He testified that he had served on various public boards and bodies and rendered public service in one capacity or another for some nineteen years, that he was a former member and vice-

chairman of the Metropolitan Area Planning Commission, that he was knowledgeable in matters of real estate development, investments, sales, etc., having previously been employed by one of Wichita's oldest and largest real estate and investment firms. He also talked with members of the Metropolitan Area Planning Department and others he considered knowledgeable on the advisability of the incorporation of Bel Aire. While it appears that Commissioner Patrick was not deposed, it is common knowledge that he has served the citizens of Sedgwick County for many years in various elective and appointed positions.

We are of the opinion that the trial court was in error in substituting its judgment for that of the Board and in its conclusions of law quoted above. The statute does not require joint consideration by the Board as indicated by the trial court in its conclusion No. 10. The record reveals each member, at least individually, considered the evidence, the statutory factors and other matters within his personal knowledge in arriving at a decision. As we recognized in *In re Reincorporation of Piper City*, 220 Kan. 6, 551 P.2d 909 (1976), the Board of County Commissioners, when considering an incorporation petition, may consider matters *not necessarily touched on by the evidence*. Additionally, the court said the Board must consider the statutory factors *whether or not there is evidence*. The members of the Board are simply required to consider those factors. Whether they consider any individual or combination of factors weightier than others in any given incorporation case is a matter left solely to the Board in the performance of its legislative function. While it might be advisable for the commission members to get together and jointly consider the matter, the statute makes no such requirement. Here the evidence was that each member of the Board considered the statutory factors and other information and each arrived at his own conclusion. The vote for incorporation was unanimous. It is presumed that the members of the Board as public officials acted faithfully and properly in the discharge of their functions. In court, the burden was on the City of Wichita to prove a reversible impropriety and it has failed to do so. See *Quivira Falls Community Ass'n v. Johnson County*, 230 Kan. 350, Syl. ¶ 4, 634 P.2d 1115 (1981).

The trial court was also in error in its conclusion that the Board must make certain affirmative determinations as set forth in

conclusion No. 11. The statute, K.S.A. 15-123, directs that incorporation shall be denied if certain conditions are found to exist but lacking such a determination the advisability of incorporation is left to the legislative wisdom of the Board. Finally, the fact that the City of Wichita submitted evidence which the trial court felt was substantial, convincing and compelling in favor of annexation by Wichita is not the test. The Board, in an incorporation proceeding, is not bound by the weight of the evidence and, in fact, may grant or deny incorporation even though the evidence favors a contrary result. As we said in *Piper City,*

"A legislature may of course give consideration to matters not presented during hearings on proposed legislation. The board acts in a legislative capacity. The hearings are not in the true sense adversary. Here there was but one side presented. Certainly a board is not compelled to grant incorporation where the petitioners make a *prima facie* showing, no one appears in opposition, and no evidence to the contrary is offered." 220 Kan. at 12.

We see nothing to be gained by extending this opinion further. The arguments set forth by the parties are fully discussed and controlled by our holdings in *Kansas City,* 213 Kan. 777, and *Piper City,* 220 Kan. 6. Incorporation of the City of Bel Aire, Kansas, was a proper exercise of legislative authority by the Board whose decision may or may not prove to be a wise one. It is not for the courts to judge the wisdom of the Board's action, or to substitute their judgment for that of the Board. As the Board complied with all statutory mandates, its decision may not be disturbed on appeal absent a showing that the action of the Board was arbitrary, unlawful or capricious. No such showing has been made and the order of the Board must be sustained.

As a final matter, the City of Wichita asserts in its cross-appeal that the trial court erred in limiting and excluding certain expert testimony it desired to present. We have examined the contention of the City together with all other arguments raised and in view of what has hereinbefore been set forth, find them to be without merit.

The judgment of the district court is reversed and the order of the Board of County Commissioners of Sedgwick County incorporating the City of Bel Aire, Kansas, is reinstated.

FROMME, J., not participating.

HERD, J., dissenting: The legislature tried to make it difficult to

incorporate areas within five miles of an incorporated city. Here the Board of County Commissioners meticulously followed the statute but found insufficient evidence to conclude the incorporation of Bel Aire would have a detrimental effect upon the community as a whole, impede the orderly economic growth of the area, or create an unreasonable multiplicity of municipal governments.

In light of the evidence of Wichita's size, direction of growth and proximity, I find the Board's conclusions arbitrary. The lifeblood of Bel Aire is Wichita. It provides the jobs, schools, hospitals, medical care, police protection, cultural, professional and other services. Those who receive the benefits should share the responsibility. The Board's action not only permits a small area of affluent citizens to avoid their share of responsibility to the entire community, but destroys metropolitan planning and zoning. The legislature tried to prevent such actions when it set out the numerous criteria previously referred to.

I would affirm the trial court.