No. 82,354

THE STATE OF KANSAS *ex rel.* STATE BOARD OF HEALING ARTS, *Appellee,* v. STANLEY W. BEYRLE, *Appellant.*

Opinion filed July 14, 2000.

*Stephen B. Plummer*, of Wichita, argued the cause and was on the brief for appellant.

*Mark W. Stafford*, of State Board of Healing Arts, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Stanley W. Beyrle, a naturopath, appeals the trial court's ruling in favor of the State of Kansas *ex rel.* Board of Healing Arts (Board) that K.S.A. 65-2872a, relating to practice by naturopaths, unconstitutionally delegates legislative authority in violation of Article 2, § 1 of the Kansas Constitution and that Beyrle's activities violated the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq.* (Act).

After setting forth the history of these proceedings, we will first consider the constitutional issue and then decide whether the injunctive and quo warranto relief granted by the trial court was properly entered.

## History of proceedings

The Board filed this action in April 1996 against Beyrle and his registered nurse assistant, Janet Royston, asserting both parties had violated provisions of the Act through various activities associated with Beyrle's naturopathic practice. The petition alleged that the statute which Beyrle claimed justified his activities, the naturopathy statute, K.S.A. 65-2872a, was unconstitutional. The petition sought declaratory, injunctive, and quo warranto relief as allowed under K.S.A. 65-2857.

A consent judgment was entered against Royston upon her stipulation that she had violated the Act and would permanently cease any activities which violated the Act. She is no longer a party to this action. Beyrle answered, asserting his authority to practice naturopathy under K.S.A. 65-2872a and denying several of the Board's factual allegations. He also counterclaimed, asserting various tort claims against the Board.

The Board moved for partial judgment on the issue of whether K.S.A. 65-2872a violates Article 2, § 1 of the Kansas Constitution by unlawfully delegating legislative authority to a private person or entity. The trial court, relying on *Gumbhir v. Kansas State Board*

*of Pharmacy,* 228 Kan. 579, 618 P.2d 837 (1980), upheld the Board's contention, but reserved judgment on whether Beyrle unlawfully prescribed drugs or exceeded his statutory authority and stayed the remainder of the issues so he could attempt an interlocutory appeal. By its decision, the trial court advised Beyrle that "the practice of naturopathy is no longer authorized by statute, and that all activity within the purview of the healing arts act must cease until such time as the legislature appropriately grants the authority."

Beyrle attempted an interlocutory appeal, but we determined in *State ex rel. Board of Healing Arts v. Beyrle,* 262 Kan. 507, 941 P.2d 371 (1997), that the trial court's judgment was not a final appealable order and dismissed his appeal.

Once back in the trial court, the Board, with the trial court's permission and without objection by Beyrle, amended its petition to include additional factual contentions relevant to whether Beyrle's activities violated the Act. The Board moved for summary judgment on its remaining claims, seeking a declaration that Beyrle unlawfully practiced the healing arts, requesting an order enjoining him from the further unlawful practice of the healing arts, and asking for the dismissal of his counterclaims. Beyrle opposed the State's motion. The parties agreed the court could decide the issues based on the pleadings, supporting evidence in the record, and prior arguments.

Beyrle does not challenge the findings of fact entered by the trial court and they are therefore conclusive for purposes of this appeal. See *Kim v. Kansas Dept. of Revenue,* 22 Kan. App. 2d 319, 325, 916 P.2d 47, *rev. denied* 260 Kan. 994 (1996); *Justice v. Board of Wyandotte County Comm'rs,* 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992).

## Factual background

Beyrle owns and operates as a sole proprietorship the Kansas Clinic of Traditional Medicine, located in Wichita, Kansas. Beyrle is not licensed to practice any branch of the healing arts in Kansas, but he practices naturopathy. This practice includes the use of homeopathic, botanical, and other remedies.

Beyrle graduated from the National College of Naturopathic Medicine in Portland, Oregon. The school's curriculum included instruction on many modalities of treatment, including diagnosis, spinal manipulation, and intravenous therapy, and the school confers a diploma stating the degree of "Doctor of Naturopathic Medicine."

Beyrle publicly uses the titles "naturopathic medical doctor" and "naturopathic physician," and he uses the letters "N.M.D" in conjunction with his name. His business cards identify him as a naturopathic physician. He was listed in the business pages of a 1997 Wichita telephone book using the designation "phy" after his name.

Between January 1995 and April 1997, Beyrle employed Royston as his nurse. At all times relevant to this action, she was his duly authorized agent and employee.

The complaint as to Beyrle's actions relates to patient E.S., who had been diagnosed with a brain tumor by a licensed physician. Beyrle treated E.S. with various homeopathic and natural remedies, including shark cartilage enemas designed to reduce pain by diminishing blood flow to the tumor, and "reduced glutathione," which Beyrle described as a cancer drug of choice in Europe. During one office visit, Beyrle manipulated E.S.'s first and second cervical vertebrae by mechanically moving her spine in an attempt to realign it.

In January 1996, Beyrle observed that E.S. was dehydrated and he instructed Royston to refer E.S. to hospice. Royston contacted Central Homecare and Hospice in Newton and gave the admissions nurse referral information. Royston informed hospice nurse Chris Rose, R.N., that she had administered IV vitamins in the office that day to E.S. Beyrle called Royston from out of state and directed that she inform the hospice to give E.S. specified vitamins, minerals, and trace elements added to a 5% dextrose and water solution (D5W), to be administered by IV. If the items could not be added to the D5W, then the D5W was to be administered by IV without the additives. Royston called in the order to the hospice and identified herself as the doctor's nurse. Rose explained that Royston would have to call the order in herself, so she called a

pharmacy to transmit Beyrle's instructions. She spoke with Doug Cline, R.Ph., and described the additives ordered by Beyrle. Ultimately, the pharmacy dispensed four 250 cc IV bags of D5W without the additives, delivering it to the hospice for IV administration. D5W for IV administration is a prescription-only product. Rose administered the IV as ordered on the basis of Royston's transmission of the order and upon the belief that Beyrle was authorized to order the product.

After E.S. was discharged from hospice she continued to see Beyrle and he administered mixtures of vitamins and minerals by IV, sometimes with purified water. The labels and package inserts for the mixtures bear the legend " 'CAUTION: Federal law prohibits dispensing without prescription.' " These vitamins, when prepared for administration by injection, including IV, are prescription drugs.

## Decision of the trial court

The trial court found that Beyrle had engaged in the practice of the healing arts without a license within the meaning of K.S.A. 65-2802(a) and (c), the practice of medicine and surgery within the meaning of K.S.A. 65-2869, and the practice of chiropractic or osteopathic medicine and surgery by his acts of: (1) using the various titles or designations described earlier, (2) making diagnoses and administering prescription and nonprescription drugs to treat, relieve, or remedy a disease, condition, or ailment, (3) manipulating or adjusting E.S.'s back, (4) supplying, prescribing, or administering prescription drugs without an order from a person appropriately licensed in the state, and (5) puncturing veins as a route of administration for any drug. Acting upon the basis that K.S.A. 65-2872a was unconstitutional, the trial court found that by engaging in these practices without a license to do so, Beyrle had violated the Act.

In the journal entry of judgment from which Beyrle appeals, the court permanently enjoined him from: supplying, prescribing, or administering any prescription drug within this state without a specific order from a person licensed by the Board to practice medicine and surgery or osteopathic medicine and surgery; puncturing

any vein, especially as a route of administration for any drug or article, without a specific order from a person licensed by the Board to practice medicine and surgery or osteopathic medicine and surgery; using any form of manipulation to adjust human tissue; supplying, prescribing, administering, or recommending any drug or substance to treat, relieve, or remedy a disease, condition, or ailment in the practice of naturopathy; making any diagnosis for the purpose of ascertaining, relieving, adjusting, palliating, or correcting human disease or ailment in the practice of naturopathy; and using the title, designation, or abbreviations N.M.D., naturopathic medical doctor, naturopathic physician, or phy.

Beyrle's counterclaims were dismissed. He again appeals, although not from the dismissal of his counterclaim, which is not an issue on appeal. The primary contentions relate to whether the naturopathy statute, K.S.A. 65-2872a, violates the Kansas Constitution, and the validity of the trial court's order granting injunctive and quo warranto relief.

*Standard of review*

It is generally agreed that the Kansas Constitution limits rather than confers power, and any power and authority not limited by the Constitution remains with the people and their legislators. In *Leek v. Theis*, 217 Kan. 784, 800, 539 P.2d 304 (1975), this concept was stated as follows:

"When an act of a state legislature is assailed as void, it is only necessary to look to the federal and state constitutions for a specific restriction on that power. Thus an act of a state legislature on a rightful subject of legislation, is valid unless prohibited by the federal or state constitution. . . ."

*U.S.D. No. 380 v. McMillen*, 252 Kan. 451, 457, 845 P.2d 676 (1993).

Because the primary issue in this case involves the interpretation of a statute, which is a question of law, our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). It is also axiomatic that an appellate court is not bound by the trial court's interpretation of the statute. *Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 782, 952 P.2d 920 (1998).

In *Bair v. Peck,* 248 Kan. 824, Syl. ¶ 1, 811 P.2d 1176 (1991), we held:

"The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

We further consider additional basic rules set forth in *Todd v. Kelly,* 251 Kan. 512, 515-16, 837 P.2d 381 (1992), by which we are bound:

"The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 971 (1990).

. . . .

" 'In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' *In re Marriage of Ross,* 245 Kan. 591, 594, 783 P.2d 331 (1989)."

We further stated in *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 348-49, 789 P.2d 541 (1990):

"In determining whether a statute is constitutional, courts must guard against substituting their views on economic or social policy for those of the legislature. Courts are only concerned with the legislative power to enact statutes, not with the wisdom behind those enactments. When a legislative act is appropriately challenged as not conforming to a constitutional mandate, the function of the court is to lay the constitutional provision invoked beside the challenged statute and decide whether the latter squares with the former—that is to say, the function of the court is merely to ascertain and declare whether legislation was enacted in accordance with or in contravention of the constitution—and not to approve or condemn the underlying policy."

*Statute in issue*

The statute challenged in this appeal, K.S.A. 65-2872a, reads as follows:

"Any naturopath who is a graduate of a nationally recognized naturopathic college as approved by the state naturopath association and practicing in the state of

Kansas as of January 1, 1982, shall be permitted to practice in Kansas without approval by the board of healing arts. No naturopath shall be permitted to practice surgery, obstetrics or write prescriptions for prescription drugs." L. 1982, ch. 378, § 6 (effective July 1, 1982).

*Legislative history*

Although the interpretation of K.S.A. 65-2872a must be made based on its specific wording and limitations, it is instructive to review some of its legislative history.

First, K.S.A. 65-2872a was not a part of the Healing Arts Act, K.S.A. 65-2801 *et seq.*, which was first enacted in L. 1957, ch. 343, §§ 1-92. Rather, it was enacted in 1982, independent of the Act. The provisions of K.S.A. 65-2872a were added as § 6 to House Bill 3144, later designated as chapter 378 of the 1982 Session Laws, by the action of a conference committee near the close of the 1982 session. We do not have the benefit of any testimony or statements of either House or Senate members as to the reason for its enactment to assist us.

While the provision was placed in our statutes within the numbered sequence of the original Act, this does not make it a part of the Act or evidence legislative intent that it should be so construed. See *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 847, 610 P.2d 1107 (1980); *State v. Sodders*, 18 Kan. App. 2d 657, 660, 856 P.2d 1360, *aff'd* 255 Kan. 79, 872 P.2d 736 (1993).

*Standing*

Beyrle asserts for the first time on appeal that the Board does not have standing to challenge the constitutionality of K.S.A. 65-2872a. The Board counters by saying the issue of standing was not raised in the trial court and that, in any event, it is empowered to administer and enforce the Act and, therefore, was a proper party to bring this action.

We have held in cases such as *Moore v. Shanahan*, 207 Kan. 645, 486 P.2d 506 (1971), that a party's failure to follow K.S.A. 60-209(a) (Corrick) in contesting another party's capacity or authority to pursue an issue waives any objections to such capacity or authority. See also *State, ex rel. v. State Board of Education*, 215 Kan. 551, 559, 27 P.2d 952 (1974) (relying on *Moore* to the same effect).

However, in *Leavenworth-Jefferson Electric Co-op v. Kansas Corp. Comm'n*, 247 Kan. 268, 273, 797 P.2d 874 (1990), we held: "A challenge to the constitutionality of an act of the legislature is a matter of such gravity an appellate court should not consider the challenge when the record discloses disqualification to make it. *Frazier v. Ford*, 138 Kan. 661, 665, 27 P.2d 267 (1933)."

Whether a party has standing to sue is a question of law subject to unlimited review. *Robinson v. Kansas State High School Activities Ass'n*, 260 Kan. 136, 139, 917 P.2d 836 (1996). While Beyrle is correct that it is generally held under Kansas law that "[t]he constitutionality of governmental action can only be challenged by a person directly affected and such challenge cannot be made by invoking rights of others," *Manzanares v. Bell*, 214 Kan. 589, 616, 522 P.2d 1291 (1974), a longstanding caveat to this rule is that it is the right of the State itself, through the correct parties and means, as representative for the people, to challenge the constitutionality of legislative enactments upon discerning some constitutional infirmity. See *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 51-53, 687 P.2d 622 (1984).

The Board relies on several provisions of the Act. K.S.A. 65-2801 sets forth the policy of the Healing Arts Act:

"Recognizing that the practice of the healing arts is a privilege granted by legislative authority and is not a natural right of individuals, it is deemed necessary as a matter of policy in the interests of public health, safety and welfare, to provide laws and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized and unqualified practice of the healing arts and from unprofessional conduct by persons licensed to practice under this act."

K.S.A. 65-2857 states: "An action in injunction or quo warranto may be brought and maintained in the name of the state of Kansas to enjoin or oust from the unlawful practice of the healing arts, any person who shall practice the healing arts as defined in this act without being duly licensed therefor."

We hold that K.S.A. 65-2857 grants the Board the right to maintain an injunction or quo warranto action to enjoin or oust the unlawful practice of the healing arts. We also recognize that the

provisions of K.S.A. 65-2864 require the Board to enforce the provisions of this Act and make all necessary investigations relative to alleged violations. It was just such an investigation which led to the commencement of the present action.

The Board has regularly employed counsel who can bring actions such as this one and we believe the right to bring such actions is not limited to the attorney general, county attorney, or district attorney. We hold the Board has the necessary standing to bring this action and raise the constitutional issues.

In addition to standing, Beyrle raises a variety of somewhat related procedural challenges to the Board's constitutional attack on K.S.A. 65-2872a, including equitable estoppel, waiver, and acquiescence. Our examination of the available record on appeal shows these contentions were not presented to the trial court and they are, therefore, not properly before us on appeal. See *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, Syl. ¶ 8, 912 P.2d 729 (1996); K.S.A. 1999 Supp. 60-208(c). Additionally, these arguments have no merit. See *Frontier Ditch Co. v. Chief Engineer of Div. of Water Resources*, 237 Kan. 857, 862, 704 P.2d 12 (1985) (quoting *State, ex rel., v. Paul and Grice*, 113 Kan. 412, 214 Pac. 425 [1923]) (laches and estoppel not generally operative against the State in upholding its sovereign rights and duties except where a positive statute so provides); *Boswell, Inc. d/b/a Reno County Adult Care Home v. Harkins*, 230 Kan. 610, 614, 640 P.2d 1202 (1982) (prior agency error, if any, does not bar enforcement of the law); 28 Am. Jur. 2d, Estoppel and Waiver §§ 138-141 (equitable estoppel not ordinarily applied against the State to deprive public of protection of statute).

*The constitutionality of K.S.A. 65-2872a*

In addressing the constitutionality of K.S.A. 65-2872a, we begin by setting forth various contentions of each side, though many of these contentions will receive little attention in our analysis because we do not consider them dispositive.

*Contentions of the board*

The Board notes the wording of K.S.A. 65-2872a, referring to "graduate[s] of a nationally recognized naturopathic college as ap-

proved by the state naturopath association" and contends this violates the principle expressed in *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, Syl. ¶¶ 3, 4, 618 P.2d 837 (1980), that while the legislature may enact general provisions for regulation and give state agencies discretion to fill in details subject to reasonable and definite legislative standards to govern the exercise of such authority, the legislature is prohibited from delegating legislative power to nongovernmental associations or groups.

*Gumbhir* involved an appeal from an order of the district court upholding the action of the Kansas State Board of Pharmacy in refusing to permit Gumbhir to either take the examination for registration as a pharmacist or to be admitted by reciprocity. Gumbhir had been refused on the basis of K.S.A. 1979 Supp. 65-1631(a), which provided, in pertinent part, that every applicant for examination and registration as a pharmacist had to be "a graduate of a school or college of pharmacy or department of a university accredited by the American council on pharmaceutical education [ACOPE] and recognized and approved by the board . . . ." ACOPE was a nongovernmental agency which approved and accredited only undergraduate schools of pharmacy located in the United States. Gumbhir received his bachelor's degree in pharmacy from a university in India but he graduated and received his master's degree and his Ph.D from United States universities. While the undergraduate schools of both of the United States universities he attended were accredited by ACOPE, their graduate programs were not. Gumbhir argued that K.S.A. 1979 Supp. 65-1631 unlawfully delegated legislative authority to a nongovernmental agency—ACOPE.

Our decision in *Gumbhir* discussed two earlier cases: *State, ex rel., v. Gleason*, 148 Kan. 1, 79 P.2d 911 (1938), and *Sutherland v. Ferguson*, 194 Kan. 35, 397 P.2d 335 (1964).

In *Gleason*, we considered whether a provision of the Osteopathic Practice Act of Kansas unconstitutionally delegated legislative power. Under the Act, the State Board of Osteopathic Examination and Registration was authorized to issue to an applicant who had successfully passed an examination given by the Board " 'a certificate granting him the right to practice osteopathy in the state of Kansas,

as taught and practiced in legally incorporated colleges of osteopathy of good repute.' " *Gleason*, 148 Kan. at 7 (quoting G.S. 1935, 65-1201). " '[O]steopathic school or college of good repute' " was defined to include " 'only such schools or colleges of osteopathy as are legally incorporated, and which prescribe a course of study covering the time provided for under the provisions of this act, and which shall instruct in all branches of study in which examinations are required for license under the provisions of this act, . . . and the requirements of which shall be in no particular less than those prescribed by the American Osteopathic Association.' " 148 Kan. at 7 (quoting G.S. 1935, 65-1202).

We held that although the Act delegated to the legally incorporated colleges of osteopathy some right to determine the standards and scope of practice of osteopathy in Kansas, it did so only within the limits prescribed by the statute, G.S. 1935, 65-1202, and it did not authorize the state board to approve schools or colleges which do not conform their teachings to the fundamental principles of osteopathy. The court found the statute was not void on the ground of unconstitutional delegation of legislative authority.

In *Sutherland*, 194 Kan. 35, chiropractors brought a declaratory judgment action attacking certain provisions of the Basic Science Act and the Healing Arts Act. Among other things, the plaintiffs asserted that in the Healing Arts Act, the legislature vested arbitrary discretion in the Board of Healing Arts by failing to prescribe a guide or standard by which the Board could exercise its discretion. Among the provisions attacked were G.S. 1949, 65-2825 (1961 Supp.), giving the Board authority to determine what schools shall be accredited, and G.S. 1949, 65-2876 (1961 Supp.), which provided that for the purpose of the Healing Arts Act, an accredited school of chiropractic shall be a legally incorporated school teaching chiropractic, which the Board shall determine to have a standard not below that of the National College of Chiropractic of Chicago, and that all such schools shall be approved by the Board. This court concluded in a somewhat summary fashion that the statute did not contain inadequate standards and that it did not constitute an unlawful delegation of legislative powers.

We said in *Gumbhir*, in discussing *Gleason*, that the standards of the colleges were to be " 'in no particular less than those prescribed by the American Osteopathic Association' " and explained: "The standards of the American Osteopathic Association mentioned in the statute were merely used as a guideline or standard to be used by the state board and the delegation of authority was to the state board, not to the American Osteopathic Association." 228 Kan. at 583-84. With regard to *Sutherland*, we noted that the Board was required to determine that the accredited schools of chiropractic referred to in the statute had standards "not below that of the national college of chiropractic of Chicago." The *Gumbhir* opinion explained that "[t]he National College of Chiropractic of Chicago was merely used as a guide or standard to be followed by the state board." 228 Kan. at 584.

With the above background, our *Gumbhir* opinion went on to hold that K.S.A. 1979 Supp. 65-1631(a) was unconstitutional, stating:

"The provision in K.S.A. 1979 Supp. 65-1631(*a*) which restricts approval of the necessary educational qualifications for examination and registration of pharmacists in this state to those individuals who have graduated from schools of pharmacy accredited by the American Council on Pharmaceutical Education, a nongovernmental agency, is constitutionally impermissible. The Kansas State Board of Pharmacy, which has been given general authority to register pharmacists, if bound by said provision, would not have the ultimate authority. That authority would be in ACOPE, a nongovernmental association which makes its own standards for accrediting those schools whose graduates may become registered pharmacists in Kansas.

"The provision of the statute referred to above constitutes an unlawful delegation of legislative authority to a nongovernmental association and is constitutionally impermissible under Article 2, Section 1 of the Constitution of the State of Kansas." 228 Kan. at 587.

We do not by our ruling herein retreat from or limit our decisions in *Gumbhir, Gleason,* or *Sutherland.* However, because of the specific wording of the naturopathy statute, we do not believe any of these cases requires the result reached by the trial court herein.

*Beyrle's contentions:*

Beyrle poses several arguments in asserting that K.S.A. 65-2872a does not unconstitutionally delegate legislative authority.

First, Beyrle notes that the naturopathy statute was passed 2 years after *Gumbhir* was published, and he argues that this should mean that the legislature intended the statute to be constitutionally valid under the principles of *Gumbhir*. It is true that the legislature is presumed to act with knowledge of existing statutory and case law. *Szoboszlay v. Glessner*, 233 Kan. 475, 480, 664 P.2d 1327 (1983). However, this presumption does not automatically mean that the statute is valid.

Next, Beyrle refers to several other statutes regulating various professionals (*e.g.*, veterinarians, dentists, physicians' assistants, etc.), which he says are similar to K.S.A. 65-2872a, and he argues the Board is singling out K.S.A. 65-2872a for special attack. Many of the statutes to which Beyrle refers do not come under the regulation of the Board of Healing Arts, but are subject to other boards. In any event, we do not find Beyrle's comparison with these statutes useful in our analysis here.

Third, Beyrle also distinguishes his case from *Gumbhir* by arguing that K.S.A. 65-2872a is merely a "grandfather" clause applicable to those in practice as of 1982 intended to protect their "right" to practice naturopathy, whereas *Gumbhir* involved a pharmacist seeking a Kansas license on grounds of reciprocity. He contends the legislature had the power and authority to exempt *all* practicing naturopaths from the Healing Arts Act and that, in light of such power, it was certainly not improper for the legislature to have taken the additional precaution of requiring minimal competence from those "grandfathered" in under the statutory wording.

Finally, Beyrle asserts that even if the language referring to approval by the State Naturopath Association violates the delegation clause, it may be severed from the rest of the statute, preserving the remainder of K.S.A. 65-2872a.

*Our analysis of the constitutional issue*

We believe it is important to emphasize that the right stated in K.S.A. 65-2872a is, by the terms of that statute, limited to naturopaths "practicing in the state of Kansas as of January 1, 1982." In other words, the statute is limited in its application and effect to a

restricted class of individuals that met its specific requirements as of January 1, 1982, and it does not grant any rights or privileges to any person who was not a practicing naturopath as of the stated date.

Black's Law Dictionary 706 (7th ed. 1999) defines a "grandfather clause" as: "A statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect."

In the usual situation where grandfather clause rights are granted, the profession or occupation becomes subject to a licensing requirement. See *State, ex rel., v. Gillen*, 126 Kan. 368, 268 Pac. 94 (1928); 51 Am. Jur. 2d, Licenses and Permits § 36; Annot., 4 A.L.R.2d 662, 667. In this instance, a licensing requirement was not established by the legislature; however, the right granted to Beyrle and any others under the statute is, in effect, a kind of grandfathering clause by which the legislature limited the right to practice naturopathy to all naturopaths practicing as of a certain date and having certain educational requirements already determined as of that date. The Board has not disputed that Beyrle falls within the timing and educational requirements of the statute, and the record in the present case shows a decree in *Stanley W. Beyrle v. State Naturopath Association*, Sedgwick County District Court case No. 85C3936, which specifically finds that Beyrle meets the criterion of the statute.

The Board's arguments would have validity if a licensing requirement had been established for naturopaths and if the authority for determining the eligibility for such licenses had been delegated to a nongovernmental entity under the statute. However, this did not occur. The legislature did not hand over to a private organization the right to set future standards; it merely determined that a certain class of individuals already meeting particular standards and practicing as of a particular date may continue to practice naturopathy. The legislature is deemed to be knowledgeable of the facts existing at the time of its enactment of the statute. In this case, the legislature is deemed to be aware of the standards and practices approved by the State Naturopath Association through 1982 and being put into practice by naturopaths practicing as of that date.

Those standards were adopted in K.S.A. 65-2872a and are not subject to change by a nongovernmental agency because of the time limitation of the statute.

Under these circumstances, the naturopathy statute is distinguishable from the statute at issue in *Gumbhir*, and we hold that the legislative power of Article 2, § 1 of the Kansas Constitution has not been unlawfully delegated in K.S.A. 65-2872a. We reverse the portion of the trial court's ruling to the contrary. We also reverse the trial court's ruling that the practice of naturopathy is no longer authorized by statute. We emphasize, however, that the practice of naturopathy is permitted only for the limited class of individuals that are specifically covered by K.S.A. 65-2872a, and no others. In addition, we hold that this limited practice must be conducted within the strict confines of K.S.A. 65-2872a, including the prohibition that "[n]o naturopath shall be permitted to practice surgery, obstetrics or write prescriptions for prescription drugs."

Because we have found the statute does not violate the delegation clause of our Kansas Constitution, we need not consider Beyrle's severability arguments.

Having found the statute constitutional, we must consider whether the trial court's injunctive relief was properly granted.

*Is remand required or was injunctive relief properly granted?*

It is Beyrle's contention that if K.S.A. 65-2872a is found to be constitutional, the case must be remanded for him to be judged by the standards of naturopathy and not other branches of the Act.

The Board argues that Beyrle did not appeal the factual findings made by the trial court and that the injunctive order was not entirely predicated upon the conclusion that K.S.A. 65-2872a is unconstitutional.

K.S.A. 65-2872a permits any naturopath who meets the qualifications of the statute to practice in Kansas without approval of the Board of Healing Arts. It specifically prohibits the practice of surgery, obstetrics, or the writing of prescriptions for prescription drugs, but makes no other reference to the requirements or restrictions of the Healing Arts Act. We will not expand the wording

of K.S.A. 65-2872a beyond the specific restrictions set forth by the legislature.

It has been clearly shown that Beyrle prescribed and administered prescription drugs in his office and later prescribed drugs in direct violation of K.S.A. 65-2782a.

With the welfare of the public in issue, the practice of surgery by a naturopath is prohibited in K.S.A. 65-2872a. K.S.A. 65-2869 describes when persons are deemed to engage in the practice of medicine and surgery, and that description includes persons

"who prescribe, recommend or furnish medicine or drugs, *or perform any surgical operation of whatever nature by the use of any surgical instrument, procedure, equipment or mechanical device for the diagnosis, cure or relief of any wounds, fractures, bodily injury, infirmity, disease, physical or mental illness or psychological disorder, of human beings.*" (Emphasis added.)

To the extent the injunction issued by the trial court restricts Beyrle's practice of surgery, the injunction is approved.

Although the provisions of K.S.A. 65-2885 relate to the improper usage of a title by a licensee and Beyrle holds no license, it was not improper for the trial court to enjoin him from using the title, designation, or abbreviations N.M.D., naturopathic medical doctor, naturopathic physician, or phy.

We hold generally that the injunctive relief issued by the trial court was properly granted and is affirmed only insofar as it prohibits Beyrle from prescribing prescription drugs or practicing surgery or obstetrics.

The case is affirmed in part and reversed in part as is more fully set forth in this opinion.

DAVIS, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Judge Wahl was appointed to hear case 82,354 vice Justice Davis pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.